ARMSTRONG v. RACHOW.

1. FRAUD—FIDUCIARY RELATIONS—CESTUI QUE TRUST—TRUSTS.
    In an action for fraud for the sale of alleged worthless shares of stock, evidence that plaintiff was the family physician of defendant and kept his account in the bank of which defendant was cashier and manager, while tending to establish that plaintiff had confidence in defendant, was insufficient to establish such fiduciary relations as requires the application of the rules applicable to cases of trustee and *cestui que trust* to measure the duties and liabilities of defendant.

2. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
    Upon a motion to direct a verdict, the testimony most favorable to the other party, together with its legitimate inferences, must be accepted.

3. FRAUD — MISREPRESENTATION OF VALUE — ACTIONABLE DECEIT — EXPRESSION OF OPINION.
    In an action for. fraud for the sale of alleged worthless shares of stock, representation by defendant that he owned considerable of this stock, that it was good stock, worth three dollars per share, that it was a good investment, and would be worth five dollars per share by the time plaintiff got it paid for, *held*, tantamount to a repre-

sentation that he had knowledge of facts which proved that the stock was worth three dollars per share.[1]

4. SAME—RESCISSION—DAMAGES—EVIDENCE—BURDEN OF PROOF—CONJECTURE.

Where, in such action, plaintiff did not rescind the sale of said alleged worthless stock, the burden of proof was upon him to establish that he had suffered loss and the amount thereof, and it could not be left as a matter of pure conjecture; he must show that the stock at the time of the sale was not worth what he paid for it.

5. EVIDENCE—REMOTENESS—VALUE—DAMAGES.

Testimony of one sale of stock, together with the bonds of the company, after this suit was instituted, and about four and one-half years after the sale to plaintiff, *held*, too remote.

6. SAME—DAMAGES—VALUE OF STOCK.

Where stock is unlisted, sales are infrequent, and its market value cannot be established, other methods of fixing its value may be resorted to.

7. FRAUD—EVIDENCE—TRIAL—QUESTION FOR JURY.

Where a "balance sheet," made by a reputable firm of accountants within three weeks of the time of the sale to plaintiff was offered in evidence, showing the assets and liabilities of the company and a summary of its operations, together with the report of the auditors, plaintiff was entitled to urge upon the jury the proposition that one familiar with such accounts and balance sheet as defendant was, would glean from it that the company was not as prosperous as defendant represented it to be.

8. SAME—EVIDENCE—TRIAL—QUESTION FOR JURY.

Where, after deducting certain items of credit in said balance sheet open to criticism, it still shows the book value of the stock to be $4.04 per share, which was the only testimony offered as to its value at the time of the sale, the trial court was not justified in submitting to the jury the question of whether the stock at that time was worth less than $3 per share.

9. SAME—DAMAGES—EVIDENCE—TRIAL—DIRECTED VERDICT.

Plaintiff, having retained the stock purchased, must show that it was worth less than he paid for it, and, having failed to do so, the court below should have directed a verdict against him.

[1]See note in 1 L. R. A. (N. S.) 258.

10. SAME—LACHES—LIMITATION OF ACTIONS.

While suit was not brought until four years and a half after the alleged fraud, recovery was not sought upon the theory of rescission and therefore promptness in bringing the action was not necessary, and, the statute of limitations not being involved, the delay was not a bar.

11. PLEADING AND PRACTICE—EVIDENCE—HEARSAY—PROOF.

The proper practice to prove any action of the Michigan securities commission is by producing the original or a certified copy of such proceedings; a telegram from a member of the commission is hearsay.

Error to Charlevoix; Mayne, J. Submitted January 14, 1919. (Docket No. 34.) Decided April 3, 1919.

Case by Robert B. Armstrong against Warren J. Rachow for fraud in the sale of corporate stock. Judgment for plaintiff. Defendant brings error. Reversed.

*Wilkinson, Routier & Hinkley,* for appellant.

*Lisle Shanahan* and *J. M. Harris,* for appellee.

Plaintiff brings this suit to recover damages for an alleged fraud perpetrated upon him by defendant in the sale of 1,000 shares of the stock of the Canadian Puget Sound Lumber Company, Ltd., at three dollars per share. The sale occurred on April 2, 1913. The claim of the plaintiff may be briefly summarized as follows: Plaintiff is a physician living at Charlevoix. Defendant at the time this transaction arose was cashier and manager of the Charlevoix State Bank, with which bank plaintiff did his banking business; that their relations were confidential; that after importunities by defendant extending over some time he purchased the stock in question, relying upon representations made by the defendant that it was "good stock," "worth three dollars at that time," would be worth five dollars a share by the time plaintiff had it

paid for; that he, defendant, had about $14,000 worth of it, and that other directors of the bank owned some of the stock. It is the claim of the plaintiff that he was not familiar with stocks, and had been unfortunate in former investments, which fact was well known by defendant. That defendant was a man who dealt in stocks, was familiar with statements made by companies, able to analyze them as plaintiff was not, and that he knew from the statements of this company, and his familiarity with it that it was not as prosperous as he represented it to be; that defendant showed him pictures of the mill, the logs in the harbor and a boat; told him the company was going to put on a line of boats to sell its lumber in the markets of the world; that it had great big holdings of timber and that its stock was a good investment. Plaintiff claims that he supposed he was buying company stock and did not know that the stock he received was defendant's stock until shortly before he brought this suit. Plaintiff claims that the relations between him and defendant were fiduciary in character, and that the principles of accounting between trustee and *cestui que trust* should be applied to the case; but that in any event defendant's conduct and representations constituted actionable fraud.

Without going into detail it should be stated that defendant denies the material facts testified to by plaintiff. It is his claim that he gave plaintiff only such information as he possessed, and that nothing said by him amounted to fraud, or was anything but the statement of an honest opinion. The trial in the court below resulted in a verdict and judgment for $3,729.92, being the amount paid for the stock together with interest. Plaintiff did not rescind, and the verdict is admittedly upon the theory that the stock was worthless.

FELLOWS, J. (*after stating the facts*). We are not impressed that the testimony of the plaintiff makes out a case of such fiduciary relations as requires the application of the rules applicable to cases of trustee and *cestui que trust* to measure the duties and liabilities of the defendant. The trial court did not submit the case upon that theory. The plaintiff was the family physician of the defendant; defendant the cashier and manager of the bank where plaintiff carried his account. The testimony does not disclose that plaintiff had committed to defendant the business of making investments for him either generally or in this specific instance. The plaintiff's testimony, however, does tend to establish that he had confidence in defendant's business ability and in what he said. If the defendant took advantage of that confidence and by actionable fraud obtained plaintiff's money, he is liable even though the fiduciary relations did not exist.

At the close of plaintiff's proofs defendant moved for a directed verdict upon nine grounds, which may be reduced and summarized as follows: (*a*) That whatever defendant said was but the expression of an opinion and did not constitute actionable fraud; (*b*) That the plaintiff did not show either that the stock was worthless or what its value was at the time of its sale; (*c*) laches.

Upon a motion to direct a verdict for the defendant the testimony most favorable to plaintiff together with its legitimate inferences must be accepted. This is so well established as not to require citation of authorities. We are constrained to remark in this connection that counsel in discussing the question of whether a verdict should be directed would be of infinitely more aid to the court if they kept this rule in mind and did not devote time and space to the consideration and discussion of testimony which disputes the case claimed to be inefficiently made.

(*a*) Upon this question this case is analogous to and controlled by *McDonald* v. *Smith,* 139 Mich. 211. In that case the defendant had offered to buy stock held by plaintiff and had said that "he had investigated it enough to know that he wanted some of it." This court there said:

"The statement of defendant under consideration is something more than a mere expression of opinion. His statement, coupled with his offer to buy, falsely implied that defendant knew facts which proved the stock to be valuable. The foregoing authorities and sound principle justify our holding such a representation actionable. What defendant said was equivalent to the false statement that he had knowledge of facts which proved said stock to be worth more than par. Had he made that false statement, his liability would be clear. If we hold that he is not liable because he conveyed this thought in guarded language, we point out a way by which unscrupulous men may accomplish fraud without responsibility."

In the instant case upon the plaintiff's proofs the defendant represented that he owned considerable of this stock, that it was good stock, worth three dollars per share, that it was a good investment, that plaintiff had never made any money, and the way for him to do was to go in debt, that this stock would be worth five dollars a share by the time plaintiff got it paid for. While there was testimony in plaintiff's case that defendant was the owner of stock in the company we are impressed that the jury would be justified in concluding that he had bought it for re-sale instead of investment, and that he was selling it to plaintiff as an investment stock and representing it to be such. It further appeared that in December, 1912, a few months before he sold this stock to plaintiff, defendant wrote to one of the directors of the company, among other things saying:

"As to the stock, I do not see it quoted in financial

circles or markets, as at present it is an unlisted stock. About the only thing that would create a market for the stock would be an excellent report made by the company at the close of this year, showing their balance sheet in fine condition. Further stating in the way of comment on their balance sheet, that great improvements had been made at the plant and much money spent, and that these were about completed and that hereafter the earnings would be appropriated to paying dividends to the stockholders, and that unless something unforeseen changed conditions, that dividends would be forthcoming early in the new year. Personally, I think that the less this stock is offered and pressed for sale, that the better the price will be when there is a market for it. If it were pounded as an unlisted nondividend stock, it would not take long to pound the life out of the market value, while the intrinsic, or holding value, would be worth just as much as it ever has been.

"As soon as I see any possible show of putting any of this stock on the market, believe me, I will endeavor to market yours at the earliest possible moment."

An "excellent report" of the company reached Charlevoix a short time before the sale to plaintiff and was shown to him. As we shall have occasion to consider this report more in detail we shall pass it for the present with the statement that it is the claim of the plaintiff that there was contained in it some figures which might challenge a careful business man familiar with company balance sheets and statements, and that we cannot say as matter of law that plaintiff is incorrect in this claim. We are impressed that defendant's statements were tantamount to a representation that he had knowledge of facts which proved that the stock was worth $3 per share, and that the case is ruled by the case of *McDonald* v. *Smith, supra.*

(*b*) The plaintiff in the instant case did not rescind. It therefore became necessary for him to establish that he had suffered loss and the amount thereof; he must show that the stock received by him was not at

the time of the sale worth what he paid for it, and to furnish a basis for computation of his loss by the jury he would be required to introduce some evidence tending to show its value if it had a value, or that it was worthless if such was the fact. The amount of his loss, if any, could not be left as a matter of pure conjecture. Plaintiff gave testimony of one sale of stock together with the bonds of the company on September 14, 1917. This was after this suit was instituted and about four and one-half years after the sale of the stock to plaintiff. It was too remote from the date of the sale to be of any probative value; and particularly is this true when we consider that as early as 1914 the company had defaulted in the payment of the interest on its bonds and was in the hands of a liquidator. This stock was unlisted and it sufficiently appears that at the time of this transaction sales were infrequent, and it is doubtful if it had a fixed market value. Where the property is of such a character and the circumstances are such that its market value cannot be established other methods of fixing value may be resorted to. *Pennsylvania Stave Company's Appeal,* 236 Pa. 97 (84 Atl. 761) ; *Beale* v. *City of Boston,* 166 Mass. 53 (43 N. E. 1029). This plaintiff claims to have done and points to the statement and balance sheet of the company heretofore referred to and bearing date March 12, 1913.

This exhibit is called "Balance Sheet, December 31, 1912, and statements relative thereto together with report dated March 12, 1913." While there is another exhibit in the case, an audit of the affairs of the company as of December 31, 1913, we shall not discuss it in detail as it shows a higher book value than the exhibit we shall discuss does, and it was not made until many months after the sale of stock to the plaintiff. The exhibit we shall consider bears date within about three weeks of the transaction in question. The ex-

hibit under discussion is the result of an audit of the affairs of the company by a reputable firm of accountants, and contains a balance sheet showing the assets and liabilities of the company, and a summary of the operations of the company to December 31, 1912, together with the report of the auditors. We have spent many hours on this exhibit with its multitude of figures. Upon its face it shows a book value of the stock of $5.65 per share if we deduct the contingent liabilities of $108,702.23. But counsel for the plaintiff insist for this exhibit two things: *first*, That one familiar with such accounts and balance sheets as defendant was, would glean from it that the company was not as prosperous as defendant represented it to be; and *second*, That it is sufficient when the proper deductions from its final balances are made to carry to the jury the question of the worthlessness of this stock and to justify the jury in finding that the stock was valueless when it was sold to plaintiff. We are not to determine the facts, but we think plaintiff was entitled to urge upon the jury the first of these propositions. The second proposition requires a consideration of the exhibit and the claimed infirmities in it.

It should be stated before taking up the important items that both counsel discuss at length certain items of loss appearing in the operating accounts—counsel for plaintiff claiming that they show some actual losses, while defendant's counsel insist they are interdepartmental and apparent only. The effect of these losses and whether apparent or real may bear upon the first use to which plaintiff puts this exhibit, but they are not sufficient in amount to materially affect the book value of the stock. The important items, to which counsel have challenged attention, are four in number and are as follows:

(1) The arbitrary addition to the value of standing timber of six per cent. per year; (2) An item of

amount contributed by stockholders at inception of company; (3) Carrying the bonds of the company as assets, and (4) Failure to deduct the value of timber sold.

Counsel for the defendant insist that he had fully explained any apparent discrepancies in the balance sheet and the accounts. We shall, however, as already stated upon a motion to direct a verdict, consider this exhibit together with the testimony in its most favorable light to plaintiff.

1. In the surplus account of the exhibit under consideration is found an item of $525,747.28 for appreciation in value of standing timber consisting principally of interest at 6% per annum on the amount invested therein. There is no testimony in this record that this amount is correct. It is an arbitrary figure reached by adding interest at 6% to the cost. While it may be a matter of common knowledge that trees grow, the amount of such growth and its value is not a matter of common knowledge, and plaintiff upon this record had the right to urge the elimination of this item. It is stated by the auditors in one of their exhibits that the item of appreciation was put in by direction of the board of directors.

2. In the surplus account is also found an item of $406,333.84, amount contributed by stockholders at inception of the company. We think it fairly appears that this company was made up by the consolidation of other companies, the stockholders of which turned over their property at an agreed price, taking stock in the present company at par in payment for their holding and the property of the old companies. Unexplained this item was subject to criticism.

3. Among the assets of the company is listed an item of $253,200 for bonds of the company held in its treasury. But in the liabilities of the company is also

found an item for the authorized issue of bonds including both those issued and unissued. Obviously if the unissued bonds are carried as a liability the item should be offset by carrying them as an asset. This item is not open to criticism.

4. From the summary of timber accounts it appears that timber to the amount of $677,233.20 (if we add the appreciation) had been sold. If this amount of standing timber was sold it should be deducted from the value of the timber holdings of the company. We are not prepared to say that the exhibit under consideration shows unexplained that this amount was deducted from the assets.

All the items which are open to criticism total $1,-609,314.32. If we reduce the assets of this company by this amount the book value of the stock is still $4.04 per share. The plaintiff's case was barren of any testimony showing or tending to show the market value of the stock at the date of sale. The only testimony as to value at the time of the sale was this exhibit which after making all allowances which are subject to criticism showed a book value of $4.04 per share. Was the trial court justified in submitting to the jury the question of whether this stock was worth less than $3 per share when the only testimony showed it to be worth at least $4.04, and may a verdict based on a finding that it was worthless stand? We think not. As already stated, and as we shall have occasion to consider later, the plaintiff did not rescind. Had plaintiff tendered back his stock as soon as he learned of the fraud and rescinded the transaction he might then recover the amount paid together with interest if he established fraud sufficient to vitiate the transaction. But where he retains the property purchased he must show that he has been damaged, must show that the property was worth less than he paid for it. This he failed to do, and upon the case as made by

him in this record the court should have directed a verdict.

(*c*) This action was brought something like four years and a half after the transaction. It is claimed by the plaintiff that he brought it soon after he learned that it was defendant's stock he had bought. The action was brought within the period prescribed in the statute of limitations. The authorities cited by defendant, cases where recovery was sought upon the theory of rescission, and where promptness in bringing the action is necessary, are not applicable. While defendant had the right to comment to the jury upon the delay in bringing the action, the action not being based on a rescission of the transaction and the statute of limitations not being involved, the delay was not a bar. In view of some of the assignments of error we should state that it was proper to permit the plaintiff to explain the delay.

As the case must go back for a new trial it should be stated that if occasion arises to prove any action of the Michigan securities commission it should be done by producing the original or a certified copy of such proceedings. A telegram from a member of that commission is hearsay.

We discover no other reversible error in the record. From the error pointed out the judgment is reversed and a new trial ordered. Defendant will recover costs of this court.

BIRD, C. J., and MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.