## D'ALESSANDRO v. VANDER HOONING.

1. FRAUD—PURCHASE OF STOCK—MISREPRESENTATIONS—EVIDENCE.
    Evidence presented in suit to recover money damages because of
    fraudulent misrepresentations made in connection with sale
    of stock of corporation which owned a restaurant business,
    *held*, to sustain trial court's finding that plaintiffs had been
    induced to make the purchase because of misrepresentations
    of material facts on the part of individual defendants who
    owned or operated the corporations whose interests were in-
    volved in the transaction, that were relied on by plaintiffs.

2. SAME—RESCISSION—WAIVER.
    One who proceeds under a contract into which he had entered by
    reason of fraudulent misrepresentations, after discovery of
    the actual situation and the falsity of the representations made,
    waives his right to rescind.

3. SAME—MEASURE OF DAMAGES.
    The measure of damages in a suit by a party defrauded when
    he entered into a contract because of misrepresentations of
    material facts is the difference between the actual value of
    the property at the time of making the contract and the value
    that it would have possessed if the representations had been
    true.

4. SAME—CORPORATE STOCK—RESTAURANT—FINDING OF VALUE.
    Trial judge's evaluation of stock of corporation, owning restau-
    rant business, as of time of plaintiffs' purchase of the stock

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 24 Am Jur, Fraud and Deceit § 300.
[2] 24 Am Jur, Fraud and Deceit §§ 210, 214.
[3, 5] 24 Am Jur, Fraud and Deceit § 227.
    Comment Note.—"Out of pocket" or "benefit of bargain" as proper
    rule of damages for fraudulent representations inducing contract.
    124 ALR 37.
    Measure of damages for fraud inducing the purchase of corporate
    securities. 57 ALR 1142, 108 ALR 1060.
[6] 14 Am Jur, Costs § 98.

is not disturbed, where plaintiffs claim it was worthless, defendants that it was worth amount stated in the contract, and proofs do show there were tangible assets having value.

5. SAME—CORPORATE STOCK—RESTAURANT—SUBSEQUENT LOSSES.

The value of stock of corporation, owning restaurant business, as of the time defendants fraudulently induced plaintiffs to purchase it by making misrepresentations of material facts, including statement it was a profitable business, terms and length of lease, and as to debts owed by corporation, was not affected by losses sustained by plaintiffs after they took over the restaurant, hence, no amount should have been allowed for such subsequent losses.

6. COSTS—MODIFICATION OF DECREE.

No costs are allowed in suit for money damages because of fraud involved in inducing plaintiffs to purchase stock of corporation owning a restaurant business, where neither party has fully prevailed on appeal by reason of a substantial modification of decree.

Appeal from Allegan; Smith (Raymond L.), J. Submitted October 11, 1961. (Docket No. 61, Calendar No. 48,746.)   Decided December 1, 1961.

Bill by Giralama D'Alessandro and John P. D'Alessandro against Gerrit Vander Hooning, Robert Vander Hooning, Van's Food Department Stores, Inc., Vander Hooning Realty Corporation, and Van's Howard Johnson, Inc., Michigan corporations, to reach individual defendants and for damages sustained because of misrepresentations inducing purchase of restaurant business.   Decree for plaintiffs determining balance due on purchase agreement after allowance of certain damages. Plaintiffs appeal.   Defendants cross-appeal.   Modified and affirmed.

*Leo W. Hoffman* and *Frederick D. McDonald,* for plaintiffs.

*Warner, Norcross & Judd* (*Harold S. Sawyer* and *Charles C. Lundstrom,* of counsel), for defendants.

Carr, J. On July 27, 1957, plaintiffs purchased from defendant Gerrit Vander Hooning the capital stock of Van's Howard Johnson, Inc. It is their claim that they were induced to make such purchase because of false and fraudulent representations, made by the individual defendants, concerning said corporation and its business. It appears that in 1955 Gerrit Vander Hooning was the sole stockholder of Van's Food Department Stores, Inc., which was transacting business in the city of Holland. Robert Vander Hooning, his son, was the manager of such business. Gerrit Vander Hooning was also the sole stockholder of the Vander Hooning Realty Corporation. In the year mentioned the latter corporation acquired real estate and constructed a building for the conduct of the restaurant business to be conducted by a corporate entity designated as Van's Howard Johnson, Inc., a Michigan corporation. Apparently the purpose was to give the daughter and son-in-law of Gerrit Vander Hooning an opportunity to engage in the restaurant business, which did not prove to be profitable under their management.

After the completion of the Howard Johnson restaurant the real estate was sold to the Champion Realty Company of Grand Rapids, the seller retaining the restaurant business and taking back from the purchaser a 10-year lease of the premises at a rental of $925 per month, with option to purchase for the sum of $100,000 within a period of 5 years. The personal property in the establishment was pledged for the payment of the rent, it being provided that the owner of the fee would acquire such property at the expiration of the term of the lease if the option was not exercised.

Previous to July, 1957, plaintiffs had been engaged in the restaurant business in the city of Detroit, operating 3 small establishments. For reasons not material they desired to acquire a restaurant busi-

ness elsewhere. It further appears that defendant Gerrit Vander Hooning wished to dispose of the Howard Johnson restaurant then being operated by his daughter and son-in-law. Said restaurant was located in Ottawa county in proximity to the corporate limits of the city of Holland. As a result of the desires of the plaintiffs they met with defendant Robert Vander Hooning, representing his father, the other individual defendant, to discuss the purchase of the business conducted by Van's Howard Johnson, Inc. The result was an agreement for the purchase of the capital stock of said corporation for the sum of $60,000. A written memorandum of the transaction, signed by plaintiffs and defendant Gerrit Vander Hooning, was executed as follows:

"1. Will purchase the capital stock for $60,000 payable $10,000 on July 27, 1957, $10,000 on October 27, 1957, $20,000 on or before October 27, 1958 and $20,000 on or before October 27, 1959.

"2. Balance sheet to be prepared as of July 27, 1957. Physical inventory to be taken July 27, 1957 or July 29, 1957.

"3. Van's Food Department Stores, Inc., to forgive of the amount due it the accumulated loss.

"4. Interest on the unpaid balance at the rate of 5-1/2%.

"5. Lease to be transferred as is.

"6. Stock to be escrowed at the First National Bank of Holland."

Following the purchase by them of the capital stock of Van's Howard Johnson, Inc., plaintiffs went into possession of the restaurant and proceeded to operate it. It is their claim that they were unable to do so at a profit and that within a few months they discovered that representations made by the individual defendants with reference to the extent of the business that had been carried on prior to the agree-

ment of July 27, 1957, were false, and that other representations of material facts were also false.

At the time of the transaction between the parties plaintiffs paid the initial instalment on the agreed purchase price. The second instalment of $10,000 fell due on October 27th following. At that time plaintiffs had discovered, as it is claimed, that they had been defrauded in the transaction, that the terms of the lease were not as had been represented to them, that the prior occupants of the restaurant had sustained material losses, and that their own operations after taking over the business had resulted in losses rather than in profits. Notwithstanding such knowledge on their part, plaintiffs proceeded under the contract and paid the sum of $10,000 on October 27, 1957, in accordance with the memorandum above quoted. Apparently they had received legal advice which they chose to disregard, and made such payment in the hope that they might eventually establish a satisfactory business.

The bill of complaint in the instant suit was filed on October 23, 1959. Plaintiffs alleged therein that they had been induced to purchase the stock of Van's Howard Johnson, Inc., because of misrepresentations as to the business that was being conducted in the name of said corporation by the daughter and son-in-law of Gerrit Vander Hooning. They also asserted that false statements had been made to them with reference to existing indebtedness of Van's Howard Johnson, Inc., that the value of physical assets was also misstated, and that representations made to the effect that the business was a prosperous one were untrue and were made solely to induce plaintiffs to make the purchase in question. The pleading also averred that plaintiffs were told that the building had been sold and that the lease taken back, with an option to purchase, was for 25 years.

Defendants Vander Hooning, Van's Food Department Stores, Inc., and Vander Hooning Realty Corporation filed answer to the bill of complaint, admitting therein that Gerrit Vander Hooning was the owner of all the outstanding stock of the 3 corporations that he had organized, and also admitting that Van's Howard Johnson, Inc., had operated at an over-all loss since it commenced operations in January, 1956. The answer denied that plaintiffs were entitled to the relief sought.

Prior to the institution of their suit in equity by plaintiffs Van's Food Department Stores, Inc., instituted an action against Van's Howard Johnson, Inc., to recover the sum of $5,353.12 claimed to be due and owing. The Vander Hooning Realty Corporation also instituted action against the plaintiffs D'Alessandro to recover the third instalment in the sum of $20,000, with interest, which under the memorandum executed by the parties to the contract was due October 27, 1958. In the trial court the 2 law actions and the equity suit brought by plaintiffs were consolidated for trial by consent of the parties.

Following the introduction of proofs the trial judge, under date of January 18, 1960, filed a written opinion. It was his conclusion that the plaintiffs were defrauded in the transaction, and entitled to relief accordingly, on the basis of misrepresentations in the following particulars:

"1. That the Van's Howard Johnson, Inc., was a profitable business.

"2. That Van's Howard Johnson, Inc., held a 25-year lease with option to purchase at 5-year intervals.

"3. The harsh terms of the lease were not revealed.

"4. That the debt due Van's Food Department Stores, Inc., was only a paper loss for tax purposes."

In accordance with the conclusions reached a decree was entered in the equity suit specifying, in substance, that the fair value of the stock in Van's Howard Johnson, Inc., on July 27, 1957, was $30,000, that plaintiffs were entitled to a credit in like amount on the specified purchase price of $60,000, and that plaintiffs were also entitled to a credit for the amount paid on the purchase price. The decree entered further provided that plaintiffs were entitled to the loss that they had incurred in the business, in the sum of $5,389.35, following July 27, 1957, and prior to their discovery that they had been defrauded. It was adjudged that, allowing the credits specified, there remained due to Gerrit Vander Hooning the sum of $4,610.65, less costs of suit to be taxed by plaintiffs, on the payment of which plaintiffs would be entitled to the delivery of the stock to them by the escrow agent specified in the memorandum of agreement. In each of the law actions judgment was entered, pursuant to the trial court's opinion, against the plaintiff therein. From the decree entered in the equity suit plaintiffs have appealed, and defendants Vander Hooning, Van's Food Department Stores, Inc., and Vander Hooning Realty Corporation have cross-appealed.

On behalf of the plaintiffs it is argued that the trial judge was in error in not awarding to them damages in a larger sum, that the stock of Van's Howard Johnson, Inc., was not worth $30,000 on July 27, 1957, but was in fact worthless, that plaintiffs should recover the entire loss incurred by them in their first year's operation of the restaurant business, and, generally, that the decree entered in circuit court was contrary to the weight of the evidence. On behalf of cross-appellants it is insisted that the value of the stock on the date of the transaction in question was actually $60,000, and that plaintiffs were not entitled to the allowance of a credit equal to the amount of the loss

sustained by them after they assumed the operation of the restaurant business.

The evidence in the case fully supports the conclusion of the trial judge that plaintiffs were induced to purchase the stock of Van's Howard Johnson, Inc., because of material misrepresentations of fact on the part of defendants Vander Hooning. It is obvious that they did not receive property possessing the value that it would have had if the statements of said defendants had been true. By proceeding under the contract after discovery of the actual situation and the falsity of the representations made, they waived their right to rescind. In consequence, we have a suit to recover damages the measure of which is "the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true." 24 Am Jur, Fraud and Deceit, § 227, p 55. In accord with the general rule are prior decisions in Michigan relating to the matter. Among the cases recognizing such rule are: *Chapman* v. *Bible,* 171 Mich 663 (43 LRA NS 373); *Gloeser* v. *Moore,* 283 Mich 425; *Paquin* v. *Van Houtum,* 343 Mich 111.

The principal question at issue on this appeal relates to the finding of the trial court as to the actual value of the stock in Van's Howard Johnson, Inc., as of July 27, 1957, the date of the transaction between the parties. As indicated, plaintiffs contend that such stock was actually worthless at the time. Such claim, however, overlooks the fact that there were certain tangible assets of value owned by said corporation, or in which it had an interest, that there was testimony indicating that in certain months prior to the purchase of the stock the restaurant had been operated at a profit, although there was admittedly an over-all loss, and that the management of the business both before and after the purchase by plaintiffs

was a matter very material to the successful operation.

Presumably the only method of disposition of the stock would have been by sale to a party or parties interested in engaging in the restaurant business. What efforts, if any, were made by plaintiffs to find such a purchaser does not appear from the proofs taken on the trial. Plaintiffs offered in their behalf the testimony of a real-estate broker who was not a resident of Holland but who apparently had had experience in the buying and selling of different types of property, including restaurants. He indicated that it was reasonable to expect that a new restaurant would at first sustain an operating loss, and that he had actually had such an experience. His testimony suggested that the stock involved in the instant controversy may have had value. In answer to a question as to such value, the witness answered:

"*A.* The question is very difficult. I would have to answer that question, I am afraid, by saying that it would have some value to some people and no value to others."

The statement of the witness is expressive of the situation presented in the instant case. It indicates that a business of a particular nature may be profitable if operated under efficient management. It may be noted in this connection that there was testimony before the trial court suggesting that plaintiffs' methods were open to criticism as to certain details of the operation. We are not prepared to say that the trial judge was in error in holding that the stock on July 27, 1957, had value. However, the record does not support the claim advanced on behalf of cross-appellants that it was worth $60,000. If the representations made with reference to the success of the business prior to said date, the terms of the

lease with the Champion Realty Company, and the existing indebtedness, had been true, it might have been worth that sum. Apparently the plaintiffs considered, assuming, of course, the truth of the representations made, that the agreed purchase price represented fair value. The conclusion may not be avoided, in view of the actual situation that existed, that such representations were in fact false, and that the stock was, in consequence, worth appreciably less than the consideration specified in the agreement.

We realize that the trial judge in attempting to place a value on the property as of the time of its purchase was faced with a difficult problem. The situation in this respect was somewhat analogous to that presented in *Hutchings* v. *Takens,* 287 Mich 96. On the record before us we are not prepared to say that the conclusion of the trial judge was not correct, or that we would have reached a different conclusion had we been in his place. We think that the decree entered with respect to the findings of fraud and the actual value of the stock at the time of the purchase was fairly supported by the record and, in consequence, is not subject to attack by either appellants or cross-appellants.

This brings us to the claim of the cross-appellants that plaintiffs should not have been allowed credit for the loss that had accrued up to the time the fraud was discovered. As before stated, the trial judge allowed such credit in the sum of $5,389.35. Plaintiffs contend that the amount of the loss for the first year of operation by them should have been allowed in the decree. In considering the diverse claims of the parties we must bear in mind that the action here is one for damages for fraud in the sale of corporate stock. The rule as to the recovery of such damages as ordinarily applied in actions of this nature is as hereinbefore stated. In other words, a purchaser who has been defrauded may recover the difference

between the value of the property receivd by him and what that value would have been had the fraudulent statements made to induce the purchase been true. The query, therefore, is whether there are special circumstances here that entitle plaintiffs to recover for loss of profits after they began operation of the restaurant.

Attention has been called by counsel for plaintiffs to *Wolbrink* v. *Sorr,* 341 Mich 512. That case involved the sale of land in the village of Sparta, Kent county. Plaintiff purchased the property intending to use it for a gasoline service station with certain additional facilities. He claimed in his action for damages that defendant represented to him that the parcel of land that was the subject matter of the agreement had a frontage on M–37, the main traveled road between Grand Rapids and Sparta, of 82 feet. Subsequently another party asserted title to the south 16 feet of the parcel. Testimony was offered on behalf of plaintiff for the purpose of establishing that the land with the 16 feet taken from it was worth much less than it would have been worth had it possessed the width stated by defendant in the negotiations between the parties, and that defendant was aware of the purpose for which the land was to be acquired. It was also shown that on appeal to this Court the party asserting title to the south 16 feet had prevailed. *Lundberg* v. *Wolbrink,* 331 Mich 596. On behalf of defendants it was contended that the measure of damages should be confined to the difference in value between 82 feet and 66 feet of frontage on trunkline M–37 as of the time of the transaction. It was argued that testimony relating to the situation after the gasoline station had been constructed should not have been admitted and, in substance, that the parties' contemplation of the use of the property for the establishing of the service station should not have been permitted by the trial judge to be given

consideration by the jury. This Court approved the charge as give to the jury and sustained the judgment rendered in plaintiff's behalf. Obviously the facts in the case were somewhat unusual. The improvements had been placed on the property prior to the action of ejectment by the real owner of the south 16 feet of the parcel conveyed to plaintiff. In other words, damages were permitted to be considered by the jury in the light of the difference in value between the 66-foot lot with a filling station thereon and the value of an 82-foot lot similarly improved. The purpose for which the lot was purchased, and its suitability, or lack thereof, for the intended use had a bearing on the value at the time of the transaction. The facts in the case at bar are not analogous. Here the subject matter of the contract was corporate stock. The misrepresentations made related to the value of that stock at the time of sale, there being no question as to the number of shares.

In *Huler* v. *Nasser,* 322 Mich 1, cited in *Wolbrink* v. *Sorr, supra,* the plaintiff brought suit on a check given to him by defendant in connection with the purchase of meat. Defendant filed a pleading amounting to a cross-declaration in which he sought recovery of money that he had paid for meat purchased from plaintiff, asserting that such meat which had been sold to defendant as "hamburg" contained matter that rendered it improper for sale for human consumption. It appeared that Nasser was prosecuted for having illegal meat products in his possession, was convicted, paid a fine, and served a jail sentence. In his cross-pleading defendant asserted a breach of an implied warranty as to the quality and character of the meat. It was held that defendant was entitled to judgment for the amount of money that he had paid plaintiff. Defendant also sought damages for loss of profits, loss on the sale of his store, money ex-

pended by way of attorney fees, presumably in the criminal proceeding against him, and damages to his personal reputation. It was held that there could be no recovery for such items because (p 8) they were not "damages within the contemplation of the parties when the sale of the frozen meat was consummated." As to the burden of proof resting on one seeking to recover damages in a case of this nature see, also, *Armstrong* v. *Rachow,* 205 Mich 168, 178.

Under the proofs in the case at bar it may not be said that the value of the corporate stock which plaintiffs purchased was affected, at the time of the transaction, by the subsequent losses sustained by them in conducting the restaurant business under the name of Van's Howard Johnson, Inc. The misrepresentations constituting the basis of plaintiffs' action for damages concerned the value of the stock at the time and were made, as plaintiffs claimed, for the purpose of inducing the purchase. An additional claim for damages because of loss of profits or losses subsequently sustained in operations may not be allowed. Damages of such nature are not within the purview of the rule applicable in cases of this character.

The decree is modified by eliminating therefrom the credit allowed by the trial court on account of the loss sustained by plaintiffs in their operation of the restaurant after July 27, 1957, and prior to their discovery of the true situation with reference to the business and the assets of the corporation in which they were purchasing stock. Inasmuch as neither party has fully prevailed on appeal, no costs are allowed.

DETHMERS, C. J., and KELLY, BLACK, EDWARDS, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.