BARNHARDT *v.* HAMEL.

1. FRAUD — EXCHANGE OF PROPERTY — FALSE REPRESENTATIONS — REMEDIES.

Where plaintiff is defrauded in an exchange of land he may disaffirm the contract, tender reconveyance and demand reconveyance or refund of what he parted with, and, if refused, bring suit to recover the same, or he may affirm the contract, retain what he received thereunder, and bring an action for fraud to recover his damages.

2. SAME—MEASURE OF DAMAGES.

In the latter case his measure of damages would be the difference between what the value would have been if the representations had been true and the actual value of what he received.

3. SAME—CONDONATION—SETTLEMENT—DEFENSES.

The acceptance by defendant of a note from plaintiff for the amount of undisclosed additional incumbrance upon land received by defendant in the exchange, not discovered until some time after the transaction had been completed, *held*, to amount to condonation of the misrepresentation, and not a bar to an action for fraud brought by plaintiff.

4. SAME—ABILITY TO FULFILL CONTRACT—DEFENSES.

Plaintiff's inability to fulfill his future obligations under his contract to purchase a farm from defendant, as part of the transaction, is not to be determined as a matter of law, where the contract recited that the balance is "payable in five years," and he is not shown to be in default, although he had paid nothing on the contract since it was executed, and had moved off the premises in question.

5. SAME—INSPECTION OF LAND—MISREPRESENTATIONS—ESTOPPEL.

The fact that plaintiff visited the farm with defendant's agent at a time of year when crops were not growing, and looked it over would not preclude him, as a matter of law, from making proof of material, fraudulent representations as to facts not then discovered by, or reasonably apparent to, him, such as the exhausted condition

of the soil, possibility of drainage, or that the land had a clay subsoil.

6. SAME — MISREPRESENTATIONS — WHETHER DISCOVERABLE NOT A QUESTION OF LAW.
   Whether the truth of said claimed representations of facts was apparent or discoverable by him under the circumstances is not a question of law.

7. SAME—EVIDENCE—PLEADING—VARIANCE—PREJUDICIAL ERROR.
   Permitting witness to answer in the affirmative a leading question as to whether the farm in question was more susceptible to frosts than other farms in that vicinity, although no claim of this nature was made in the declaration, in view of testimony that in the "year of the big frost" there was a frost which was quite general in that part of the State, *held*, prejudicial.

8. SAME—TRIAL—EXCITING SYMPATHY OF JURY—CURING ERROR.
   Where plaintiff's real claim of fraud related to the soil, and not the elements, but throughout the trial by evidence, argument, and ruling of the court the misfortunes and distress which befell plaintiff and his family by reason of failure of crops partly due to frost one season, and to unusually hot, dry weather another, was emphasized, *held*, prejudicial, although the court instructed the jury not to let their sympathy influence their verdict.

9. SAME—DILIGENCE IN DISCOVERING—STATUTE OF LIMITATIONS.
   In an action for damages for fraud in an exchange of land, no special diligence is required to discover the fraud or in bringing such action after discovery short of the statute of limitations.

Error to Manistee; Withey, J. Submitted February 4, 1919. (Docket No. 84.) Decided October 6, 1919.

Assumpsit by Elizabeth Barnhardt and another against Adolph Hamel and Adolph Kann, copartners as Hamel, Kann & Company, for fraud and deceit in the exchange of real property. Judgment for plaintiffs. Defendants bring error. Reversed.

*Smurthwaite & Campbell,* for appellants.

*Harry F. Hittle* (*Max E. Neal,* of counsel), for appellees.

STEERE, J. Plaintiffs recovered a verdict and judgment for $2,400 against defendants as damages for fraud claimed to have been practiced upon them by the latter in a land deal negotiated in April, 1914. At that time defendants were and had been for some years in the business of selling farm lands in the vicinity of Manistee and adjoining counties, with their headquarters and office in Manistee, Michigan.

Plaintiffs, who are husband and wife, then owned and resided upon a small farm of 19¾ acres in Allen county, Indiana, located about 9 miles southwest of Fort Wayne, which they valued at $3,500. Defendants owned and had for sale a farm of 120 acres, called the "Strine Farm," located in Arcadia township, Manistee county, Michigan, on which they put a price of $6,000, or $50 per acre. The parties were brought together through the activities of one John W. Long, of Monroeville, Indiana, whose business was "real estate and law," who had known both contracting parties for some time and was experienced in selling Michigan farms, as he testified. Although some question is raised by defendants as to the scope of his agency, it is undisputed that he initiated negotiations and closed a contract between these parties by authority of defendants, from whom he received a commission and for whom he testified he had sold several farms since then—had been in their office he supposed 40 times.

The transaction involved an exchange of the two properties on a basis of $3,500 for plaintiffs' 19¾ acres in Indiana, and $6,000 for defendants' Strine farm in Michigan, plaintiffs to deed their land to defendants subject to a $1,500 mortgage and defendants to eventually deed the Strine farm to plaintiffs who were to give a mortgage back on it for $4,000 as balance of the purchase price. The contract was closed at Barnhardt's home in Indiana where Long, who drew the initial papers, went for that purpose after

Barnhardt had been to Michigan with Long on the latter's solicitation to look at Michigan lands and had seen the Strine farm. The initial paper drawn by Long was a land contract from "A. Kann & Co." to plaintiffs agreeing to sell and convey them the Strine farm (giving legal description) for $6,000, payable $2,000 cash and $4,000 within five years from March 1, 1915, with interest at 6% from date, the instrument being dated April 20, 1914. Growing crops on the premises were reserved, possession was to be given March 1, 1915, and "deed to be made and abstract delivered at Monroeville, R. No. 4, on or before October 1st, 1914." This instrument in duplicate was signed first in order by plaintiffs, followed by "A. Kann & Co., per Jno. W. Long." On it was indorsed a receipt for $2,000, dated April 20, 1914, signed "A. Kann & Co. per Jno. W. Long." Long also drew up a short form deed from plaintiffs to defendant Adolph Kann containing what was supposed to be (but was not) a description of plaintiffs' Indiana land for one dollar and other valuable considerations, dated April 30, 1914, which defendants executed, acknowledged before and delivered to him.

In the spring of 1915 Barnhardt moved with his family, consisting of a wife and 10 children, to Michigan and settled upon the Strine farm which he proceeded to cultivate. Up to that time the details of the business had been attended to by Long who both drew up the papers and as agent signed what purported to be defendants' firm name where it was required. But, as Kann testified he authorized Long to close the deal and it was subsequently ratified by defendants, they are not in a position to question his agency beyond, at most, their denial of his authority to make certain charged untruthful representations upon which plaintiffs claim to have relied.

About 80 acres of the Strine farm had long been

cleared and under cultivation. It was an old place with fairly good farm buildings and other improvements, including an orchard of four acres. Barnhardt looked over the buildings and improvements when he visited the place in April, 1914, and no complaint is made of any fraud or misrepresentation as to them. The improved portion was sandy soil which had been farmed for many years and, as claimed, to exhaustion. A neighbor named Bradford testified that he had known the farm for over 40 years, that it was "old land and to be productive in that community it must be fertilized." The back 40 was unimproved swamp land. Barnhardt accompanied Long to Michigan to look at farms and was taken by him to look at this and other places in an automobile, in company with a driver Kann furnished, at a time when no crops were growing. They were at this farm about an hour during which time he looked through the buildings and improvements generally and walked across some of the cultivated land which he was assured was sandy loam with a clay sub-soil. On returning to Manistee he and Long went to Kann's office and talked of the matter. Two other farms were also under consideration but this one had impressed him more favorably because of its larger acreage. He testified that Kann asserted it was a very good farm, raised good crops of all kinds, such as corn, wheat, oats, potatoes and a lot of hay, being all good farming land; that after his return to Indiana Long visited their home and repeated these assurances, with various other laudatory statements as to the place and surrounding conditions, to him and his wife. While many things are charged in plaintiffs' declaration the substantial false and fraudulent representations claimed to have been made by Kann and Long by which they were induced to enter into the agreement related to the nature and fertility of the soil and that the marsh could be re-

claimed and made good farming land, also the market value of such land in that part of Michigan.

After moving his family and personal effects to Michigan in April, 1915, Barnhardt was in somewhat straitened circumstances and borrowed some money from Kann. He proceeded energetically to work the farm with the assistance of his oldest son, who was 14 years of age. With such facilities as he had he planted and cultivated quite an acreage of various crops, including 28 acres of corn, 14 acres of beans and 6 acres of potatoes.

Some time before July, Kann discovered that the deed from plaintiffs to him of the Indiana place contained a wrong description and went out to their farm where he had them execute another deed, dated July 7, 1915, which properly described the property. He was there but a few minutes and explained the necessity of their signing a deed to correct the description, which they did without protest although Barnhardt then told him the starting`crops did not look very good. However they might otherwise have turned out, a killing frost during the summer practically destroyed the crops, that being what witness spoke of as "the year of the big frost" which was quite general in that section of Michigan. Soon after finding the error in the deed Kann also discovered unpaid back interest on the $1,500 mortgage plaintiffs left on the Indiana land and that there was in addition a second mortgage for $300 on the land which he had to pay. When confronted with these discrepancies Barnhardt gave Kann a note, dated July 25, 1915, for $351.89 due December 1, 1916, which was never paid. He also later in the season acknowledged liability for some delinquent taxes against the Indiana land.

The second season (1916) he again planted and cultivated the farm, but the crops were poor and it produced but little. He admitted the weather was hot

and dry during that summer and it was a poor year for farming. Finding, as he testified, that he was unable to support his family by what he could raise on the farm, and having discovered by experience the misrepresentations and fraud imposed upon him by defendants as to the nature and value of the farm, he moved with his family to the nearby village of Arcadia and found employment in a furniture factory, after which he began this action to recover damages for the fraud and deceit practiced upon him.

Plaintiffs introduced testimony to the effect that the tillable portion of this farm was light, sandy soil, with no clay sub-soil, and was run down, worn out, old land which had been improperly worked without fertilization and cropped to exhaustion; that a fair market value of that portion of the place in its then worn out condition did not exceed $20 per acre, and about 30 acres of the back, uncleared 40 acres was worthless marsh, so wet, soft and boggy that stock could not even go upon it to pasture and so low that drainage was impossible; while defendants in person or by their agent Long had represented and asserted the market value of the 120 acres to be fully $50 per acre and cheap at that price, the cultivated portion being good, fertile sandy loam with clay sub-soil which raised good crops, and the marshy, unimproved portion being good farming land which could be cleared, drained and farmed successfully. Defendants denied misrepresenting the place or conditions in any particular, insisted that they answered his questions about it truthfully, did not represent it was underlaid by a clay sub-soil, or that the marsh was susceptible of perfect drainage, contended that Barnhardt having examined the property and seen the nature of the soil and marsh to his own satisfaction was estopped from claiming he was misled; introduced testimony tending to show that the cultivated land was of average quality and fertility

in that locality and the market value of improved farms in that vicinity was from $40 to $50 per acre. The highest appraisal by a disinterested witness which we find put upon this farm in its then condition is, however, $40 per acre for the cultivated portion.

Barnhardt had made no payment on the Strine farm beyond the $2,000 credited on his contract for the mortgaged 19¾ acres in Indiana, and it was conceded that in addition he owed Kann for the unpaid note above mentioned and other unsecured indebtedness, for seed furnished, back taxes on the Indiana land, etc., $599.98. This the trial court instructed the jury should be deducted from any damages they might find plaintiffs had suffered because of the claimed fraud, or if they found plaintiffs not entitled to recover the verdict should be for defendants in that amount under their claim of recoupment, and stated the measure of damages applicable to plaintiffs' claim would be the difference between what the property would have been worth if defendants' representations, as claimed, were true and what it was actually worth.

While conceding the general rule, defendants' counsel contend that its application would be unjust and inequitable under the facts in this case, where plaintiffs themselves falsely stated the incumbrance upon their Indiana property and only had at best about $1,400 interest in the Strine farm upon which they made no further payments and abandoned it at the end of the second season; and in any event the jury should have been instructed that plaintiffs having failed to remain and, on their part, abandoned the farm and contract, recovery could not exceed their actual interest in the land.

No requests were tendered to the court upon the question of damages by defendant. This is an action at law for a claimed fraud perpetrated upon plaintiffs with no claim of rescission or tender back of the prop-

erty. They could have either disaffirmed the contract, tendered reconveyance with demand for refund, or reconveyance of the Indiana property, and, if refused, brought suit to recover the same or affirm the contract and, retaining that which they acquired under the same, bring an action for fraud to recover as damages the difference between the value of what they would have received if the representations were true and the value of what they actually received. *Smith v. Realty Co.*, 175 Mich. 600. They saw fit to adopt the latter remedy and affirm the contract. Their misrepresentation as to the amount of incumbrance on their Indiana land was condoned and settled shortly after they moved upon the farm, before they had on their part learned of the fraud they now complain of, as they claim, and it cannot now be urged by defendants as a bar to this action. Neither is plaintiffs' inability to fulfill their future obligations under their contract for purchase of the Strine farm to be determined as a matter of law. Whatever their indebtedness or delinquencies may otherwise be, they are not shown to have been, when this action was brought, in default on their contract to purchase the farm signed by them at their home in Indiana, drawn up and signed by Long for defendants, which they subsequently ratified, accepted the benefits therefrom and have since retained. It recites that "This contract contains all the agreements between the parties hereto," acknowledges payment of $2,000 down, and makes the deferred payment of $4,000 "payable in five years from March 1, 1915, at 6% interest from date."

The circumstance that plaintiff, chaperoned by Long, went to and spent an hour on the farm looking it over at the time of year shown would not preclude him as a matter of law from making proof of material, fraudulent representations as to facts not then discovered by or reasonably apparent to him, such as the

exhausted condition of the soil, possibility of draining the swamp, or that the land had a clay sub-soil. Whether the truth of these claimed representations of facts was apparent or discoverable by him under the circumstances was not a question of law. *Jackson* v. *Armstrong*, 50 Mich. 68.

In the re-examination of a willing witness for plaintiff named Rowan he was asked, "Is this farm of Mr. Barnhardt's subject to frost?" to which defendants' counsel objected as immaterial and because no charge of that kind was declared upon by plaintiff, whose counsel said in reply that it was brought up on cross-examination, to which the court said:

"No; that is not all there is about it. The plaintiffs' claim is, the defendant represented it good for farming purposes, for crops generally, and if the locality and this land in particular is subject to frosts and to freezing that is pertinent and should be inquired into. The objection is overruled. It goes to the very gist of the action—whether it is good for farming purposes or not."

The witness was then permitted to answer the leading question if it was more susceptible to frosts than other farms in that vicinity, and said the rear of it was, where near the swamp, the same as land he was working, but the balance as a rule was not. As no claim of this nature is made in plaintiffs' declaration, nor covered by any of the representations claimed to have been fraudulently made by defendants, the argumentative ruling was particularly prejudicial in connection with the fact which was incidentally and inevitably disclosed in the progress of the trial that plaintiffs had lost their first crops from that cause in the "year of the big frost" which was quite general in that part of the State. Plaintiffs' real claim of fraud related to the soil, not the elements; but, carried through the trial by evidence, argument and ruling of

207—Mich.—16.

the court, is emphasized the misfortunes and distress which befell plaintiffs and their children by reason of the failure of their crops during those two years, concededly due, in part at least, to the year of the big frost, followed by an unusually hot, dry season. On this subject the court told the jury they had a right to have "all the sympathy that is commensurate with the situation for an unfortunate in any and every case," which should not, however, influence their finding, and further said in part:

"You cannot help sympathizing with Mr. and Mrs. Barnhardt and the family; may be you sympathize with Mr. Kann in his troubles, but you must not let that influence your verdict,—not one particle."

Barnhardt was permitted to testify that he was unable to earn a living from the place for his family and members of it were obliged to work elsewhere to that end, and his wife after testifying in general to the same effect was permitted against objection to testify as to their numerous family, that their friends and neighbors contributed to their support and gave them clothes for the children, because they did not have enough and needed them. When counsel for plaintiff had apparently exhausted the subject and said, "I think that is all," the court suggested:

"Why don't you find out why she didn't buy herself clothes and clothing for the family?"

Counsel then renewed the subject, asking:

"Q. Why didn't your husband and yourself buy them clothes?"

Objection to which was overruled and the witness answered:

"He didn't raise enough on the farm to buy the clothes we needed, and he had to work out."

Plaintiffs' counsel cite in support of this line of inquiry *Yanelli* v. *Littlejohn*, 172 Mich. 91. In that

case there were no children whose deprivations were or could be stressed to rouse the sympathy of a jury. Commenting that some of the testimony complained of was remote and might properly have been excluded, the court went no farther than to hold:

—"that whether the plaintiff was able to live on the place, and the amount that could be produced there, were material questions, as well as the efforts made by the plaintiff and family in that direction."

The testimony in this case did not stop there but was elaborated in the distress of plaintiffs' children to a point where the court felt impelled to tell the jury that they could not help sympathizing not only with the plaintiffs in the case but with their family, and "may be" even with defendant Kann, as to whom no small children were shown to appertain. Despite this somewhat equivocal caution, we are impressed that a prejudicial tone was given to the case in the particular complained of, diverting from a fair and impartial trial of the real issues, which is reflected in the verdict.

Upon the chief grounds urged for the defense why a directed verdict should have been granted, it may be stated that under the testimony in this record we cannot accept the contention that as a matter of law plaintiffs have by any conduct following discovery of the claimed fraud waived the same, or that lack of diligence after its discovery precludes this action. The relief asked in this form of action does not involve the parties being placed *in statu quo,* but is only to recover damages for a wrong done, and no special diligence is required to discover the fraud or in bringing such action after discovery short of the statute of limitations. *Dayton* v. *Monroe,* 47 Mich. 194; *Smith* v. *McDonald,* 139 Mich. 225; *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092); *Wegner* v. *Herkimer,* 167 Mich. 587; *Hutchinson* v. *Westbrook,* 191 Mich. 484.

For the errors above pointed out the judgment must be set aside and a new trial awarded, with costs to defendants.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.