## PAQUIN *v.* VAN HOUTUM.

1. APPEAL AND ERROR—GREAT WEIGHT OF EVIDENCE—QUESTION FOR JURY—SALE OF BOTTLING WORKS.

   The Supreme Court cannot set aside a verdict on the ground that it was against the great weight of the evidence or that it disclosed prejudice if proof was properly admitted, where it was sufficient to present a question of fact in that there was a sharp conflict in evidence presented as to what was said and done in negotiations that led up to the sale of bottling works from defendant to plaintiff.

2. CONTRACTS—FRAUDULENT REPRESENTATIONS TO INDUCE.

   Fraudulent representations inducing a contract will void it.

3. SAME—EVIDENCE—FRAUDULENT INDUCEMENT.

   It was not error for trial court to permit testimony to be introduced in action for fraud in regard to defendant's statements to plaintiff during the negotiations which led up to execution of contract.

4. WITNESSES — CROSS-EXAMINATION — EMPLOYEE OF CORPORATION OWNED BY DEFENDANT.

   It was not error for trial court to permit plaintiff to call as a witness for cross-examination under the statute, defendant's son-in-law who had been in the employ of bottling business for past 17 years, during the last 12 of which he was production manager, where defendant owned the great majority of the stock and was the manager of the company owning the bottling works, the subject of the contract sued upon (CL 1948, § 617.66).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 888–890.
[2] 12 Am Jur, Contracts §§ 143–146.
[3] 24 Am Jur, Fraud and Deceit § 267 *et seq.*
[4] 58 Am Jur, Witnesses § 614 *et seq.*
[5] 20 Am Jur, Evidence § 450 *et seq.*
[6, 8] 24 Am Jur, Fraud and Deceit §§ 190, 191, 208.
[7] 24 Am Jur, Fraud and Deceit § 207.
[9, 10] 24 Am Jur, Fraud and Deceit § 217 *et seq.*

5. Evidence—Hearsay—Statements Not Made in Presence of Defendant.

Testimony of statements claimed to have been made by defendant's son-in-law after sale of bottling business was completed and not in the presence of defendant, which indicated that the son-in-law felt plaintiff had gotten a "raw deal," *held*, highly prejudicial and reversible error as they should have been excluded under the hearsay rule.

6. Fraud—Affirmance of Contract—Rescission—Delay.

An action for fraud after affirming a contract does not require the prompt action required when the action is based on rescission.

7. Same—Laches—Statute of Limitations—Damages—Affirmance of Contract.

Laches, short of the statute of limitations, is not a defense to an action for fraud brought by plaintiff who affirms the contract and seeks redress in damages.

8. Same—Rescission—Action for Damages.

The fact that plaintiff first offered to rescind contract for purchase of bottling works would not preclude him from subsequently proceeding in an action in damages for fraud, when such offer was not accepted, although facts constituting alleged waiver would be material in question of whether a fraud was perpetrated.

9. Same—Measure of Damages.

A defrauded party is entitled to recover as damages the difference between the real and the represented value.

10. Trial—Confusion of Jury—Damages.

Jury *held*, under record presented, to have been confused as to amount of damages to which plaintiff was entitled in his action against defendant vendor of bottling business for fraudulent representations in the sale of the business.

Appeal from Kent; Souter (Dale), J. Submitted June 7, 1955. (Docket No. 6, Calendar No. 46,444.) Decided October 3, 1955.

Case by Victor J. Paquin against Martin Van Houtum for damages resulting from alleged fraudulent representations in connection with sale of business. Verdict and judgment for plaintiff. Defendant appeals. Reversed and new trial granted. ·

*Warner, Norcross & Judd (Harold S. Sawyer* and *Joseph B. White,* of counsel), for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

KELLY, J.  A jury awarded plaintiff and appellee, Victor J. Paquin, $7,199.50 damages, finding that he had been induced by the fraudulent misrepresentations of the defendant and appellant, Martin Van Houtum, to purchase defendant's soft drink bottling concern in the city of Grand Rapids.

Defendant appeals, and the 8 questions he alleges are involved can be grouped in 4 divisions as follows:

1. Verdict contrary to clear weight of evidence;
2. Erroneous introduction of evidence;
3. Waiver barring claim for damages;
4. Erroneous charge to jury.

Defendant, 66 years of age, was born and lived all his life in Grand Rapids.  He had been in the soft drink bottling business for 30 years prior to 1951.  In July, 1951, the assets of the bottling business were sold to Edward Nold for $25,000, with a $5,000 down payment and the balance secured by chattel mortgage.  Nold, failing to make payments, went into bankruptcy and defendant foreclosed the mortgage.  The bankruptcy court ordered all assets covered by the mortgage to be restored to defendant as owner of the mortgage.

Approximately one year after defendant's sale to Nold, namely, June, 1952, plaintiff read appellant's advertisement offering the bottling plant for sale. Plaintiff contacted defendant, and, he testified, defendant told him he wanted to get out of the bottling business because of age and ill health, and when defendant asked him if he were a bottler he told defendant he knew nothing about the bottling business.

Plaintiff testified that during preliminary negotiations defendant told him that his product enjoyed a wonderful acceptance and reputation in the trade; that in April, 1952, he had had all the machinery and equipment completely overhauled and, therefore, it was in good running condition; that he had always made a profit in operating the business; that plaintiff could reasonably expect to net $10,000 a year on the business; that a Mr. Nold had the business and it had run down while he was operating it but that he (defendant) had brought it back to a break-even point after repossessing it. All this testimony was denied not only by defendant but also by defendant's son.

On July 7, 1952, the parties came to terms and plaintiff asked defendant to have his attorney consult with plaintiff's attorney in the preparation of papers. This was done, resulting in the closing of the deal on July 12, 1952. The written agreement provided in substance:

1. That the 1,600 shares to be transferred to plaintiff was all of the authorized and issued and outstanding stock of the corporation;

2. That defendant was absolute owner of said stock, free of liens or claims, and warranted title thereto;

3. That all of the assets of the corporation were free of claims and liens and that the corporation owned said assets and had the right to the various "Folger" names by which it had been known;

4. That the corporation was lawful and existing;

5. That defendant would personally undertake to pay all debts and other obligations due to date of consummation and that there were no contracts with officers or others or continuing liabilities.

Plaintiff took possession and began production on Monday, July 14, 1952. Plaintiff spent the first week at the plant and then put his 28-year-old son in

charge. The son had for the previous 3 years been driving a Greyhound bus and had never managed a business. The son brought into the business a friend who was working for a beer distributor and put him in charge of sales. The business continued until plaintiff closed it on the following October 11th or 12th.

On September 22, 1952, plaintiff's attorney sent a letter to defendant, informing him that he had been guilty of misrepresentation, and that plaintiff, therefore, was rescinding and cancelling his purchase of defendant's stock and stood ready to surrender the stock certificates in exchange for a refund of the $10,000 purchase price.

On December 9, 1952, plaintiff, through an auctioneering firm, conducted an auction sale of physical tangible assets, and as a result of such sale plaintiff received $2,381.47 of the gross proceeds of $3,522.50.

Question 1. *Should a new trial be granted because the verdict of the jury was contrary to the great weight of evidence or influenced by prejudice?*

There was a sharp conflict in evidence presented as to what was said and done in the negotiations that led up to the sale. There were several unusual phases to the testimony. Defendant points to the fact that it is undisputed that he went to the plant to assist plaintiff in any way he could on several occasions between July, when plaintiff took possession, and Labor Day, and that at no time did plaintiff complain to him that defendant had made any of the false representations he relies upon in this trial. Defendant further points out that both he and his son refute plaintiff's testimony, but that plaintiff did not call his wife to the stand to corroborate him and that the wife was present when the fraudulent statements are alleged to have been made.

Defendant calls this Court's attention to the fact that the sale of the stock was made for $10,000 and the appraiser for the bankruptcy court inventoried the physical assets and established a value of $14,-766.71. Plaintiff calls attention to testimony showing not only an absence of good will but an existence of hostility toward the bottling company; the fact that the previous purchaser Nold could not successfully operate the plant even though he was experienced with machinery and with the bottling business and was in constant contact with the customers; that Mr. Ernest Proud, a director of Michigan Bottlers Association and president of Southern Michigan Bottlers Association, testified that the business "could not be operated profitably" and that "the franchise value wasn't there to begin with."

The jury and the trial court had an opportunity to weigh the testimony after hearing and observing the witnesses. This Court is limited to the printed words in weighing the testimony.

The record discloses that if the proof were properly admitted, said proof was not only sufficient to submit the issue to a jury, but was of such a nature that this Court cannot set aside the verdict on the ground that it was against the great weight of evidence or that said verdict discloses the existence of prejudice.

Question 2. *Did the court err in allowing the introduction of improper evidence?*

It is appellant's contention that after plaintiff and defendant executed a written instrument, prepared by their respective attorneys, containing the warranties above referred to, that all testimony as to conversation between the parties preceding the execution of the agreement should have been excluded by the trial court. Appellant relies upon the principles set forth in *Bates Tractor Co.* v. *Gregory,* 199 Mich 8. In that case defendant contended that be-

fore he bought the tractor he relied on certain letters and circulars as to how the tractor would perform. The trial court held plaintiff had defrauded defendant and gave judgment for damages. In reversing the judgment, this Court said (pp 13, 14):

"We are of opinion that the contention of plaintiff must prevail. * * * We have held that, where the parties to a contract reduce it to writing and agree as to what warranties said written contract shall contain, other warranties growing out of antecedent representations may not be imposed upon the vendor. * * * Representations in the nature of warranties antecedent to the contract cannot be urged as fraud in cases where the contract is in writing, and contains specific warranties. The evidence introduced upon the part of the defendants should have been rejected, and a judgment should have been entered for the plaintiff."

Appellee relies upon the legal principles set forth in *Mesh* v. *Citrin,* 299 Mich 527. In this case plaintiff subleased a filling station from defendants. The sublease provided:

" 'Said party of the second part [plaintiff] acknowledges that it has examined and knows the condition of said premises and the buildings, equipment, machinery and appliances situated thereon, and acknowledges that it has received the same in good order and repair, that no representation as to the condition or repair thereof have been made by the party of the first part.' "

In *Mesh* v. *Citrin, supra,* plaintiff, before signing the contract, had it examined by his attorney. Plaintiff testified that after going into possession he found that the premises had been grossly misrepresented; that the station did not pump the gasoline defendants stated it would; that he could not make the $50 or $60 per week defendants said he could,

and that the equipment was in unworkable condition. This Court answered defendants' contention that as a matter of law the plaintiff was estopped to assert the representations in question in the following language:

"Defendants contend that as a matter of law plaintiff was estopped from claiming any misrepresentation of the condition of the station and equipment because of the above-quoted provisions of the lease and supplemental agreement. Such provisions are not binding on plaintiff if he was induced to sign the lease by defendants' fraudulent representations. *Delta Asbestos Co., Inc.,* v. *Sanders,* 259 Mich 317."

*Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich 482, involved a written contract which provided:

" 'This subscription is not subject to countermand and no conditions, agreements or representations either written or verbal, other than those printed herein, shall be binding on said company. * * * This subscription contains the entire contract between the subscriber and the company.' "

This Court said (pp 486, 487):

"The seal of silence as to actual fraud is not imposed by any such provisions. It is elementary that fraudulent representations inducing a contract will void it. Plaintiff does not seek to vary the terms of the contract, but claims the contract is void because she was induced to execute it by false and fraudulent representations made by Mr. Scott. It has long been settled that such provisions in a contract do not prevent showing the contract is void by reason of false and fraudulent representations in its procurement. *Peck* v. *Jenison,* 99 Mich 326; *J. B. Millet Co.* v. *Andrews,* 175 Mich 350; *J. B. Colt Co.* v. *Reade,* 221 Mich 92."

If appellant made the representations claimed by appellee, such as the reconditioning of machinery,

the good will that had been earned in the past, and the past earnings of the company, he was not making same as a warranty in regard to the future, but as a statement of fact as to what had happened in the past.

Under the decisions above set forth we hold that the trial court did not err in permitting the testimony in regard to defendant's statements to plaintiff during the negotiations which led up to the execution of the contract.

Defendant argues that the trial court committed reversible error in allowing plaintiff to call to the stand for cross-examination the former production manager, Mr. Reidsma. This witness, the son-in-law of defendant, was an employee of the business for 17 years, the last 12 years as production manager. Defendant objected, insisting that this witness did not come within the statute (CL 1948, § 617.66 [Stat Ann § 27.915]) permitting the calling for cross-examination "the opposite party, employee or agent of said opposite party," because the witness was an employee of the corporation and not the defendant. The defendant not only owned the great majority of the stock but was the manger of the company. The court did not err in allowing this cross-examination.

Witness Reidsma owned a few shares of stock in the corporation, which he assigned to appellee on the day the sale was made. He was cross-examined as to whether he had held up the closing of the deal by refusing to assign his stock. This witness denied. He was then asked whether he told plaintiff and his son, after the sale was completed and plaintiff had taken over the operation of the plant, that defendant was planning to close the plant on Labor Day if he did not complete a sale before that date. Witness denied both conversations.

Plaintiff then called to the stand plaintiff's son, who testified that Reidsma had told him that he held up signing his stock certificate because he thought plaintiff was getting a raw deal and that Reidsma had trouble sleeping nights over it. Plaintiff's son also testified that Reidsma said that the plant would have been closed Labor Day if defendant had not secured a buyer. Both of these statements were made outside the presence of the defendant after the sale was consummated and if same had been offered as proof by plaintiff or plaintiff's son before Reidsma was called should have been excluded under the hearsay rule. Plaintiff cannot circumvent this rule by calling Reidsma to the stand, and then under the pretense of impeachment, place plaintiff's son on the stand and have him testify as to what he heard someone say outside the presence of the defendant. We disagree with the trial court's opinion stating: "In any event, the court is of the opinion that no prejudice resulted to the defendant from according the plaintiff the right to cross-examine this witness." We consider the testimony not only improper but highly prejudicial.

Question. 3. *Was the defense of waiver available to defendant?*

Defendant bases his argument that plaintiff waived his right of action on the fact that within a week or 10 days after taking over the plant the plaintiff was fully advised of the facts such as faulty machinery, absence of good will, et cetera, and that plaintiff decided to gamble on the busy summer season. Defendant also calls attention to the fact that when plaintiff wrote his letter of September 22, 1952, rescinding and cancelling the agreement, that this letter constituted a ratification and affirmance and an intent to waive the fraud and an election to forego damages. Further, that the record discloses without dispute that plaintiff endeavored to

sell the plant to his son and Reidsma at the close of the busy summer season and that later, in September, plaintiff admitted he advertised the business for sale and as a result of said advertisement 2 people indicated an interest in it.

An action for fraud after affirming a contract does not require the prompt action required when the action is based on rescission. In *Poloms* v. *Peterson,* 249 Mich 306, 309, this Court said:

"Defendant's contention that by retaining possession the plaintiffs have estopped themselves from recovering in this suit is not well founded. They had the right of affirming the contract and of seeking redress in damages. Laches short of the statute of limitations is not a defense to an action so brought. *Barnhardt* v. *Hamel,* 207 Mich 232, and *Haukland* v. *Muirhead,* 233 Mich 390."

In *Haukland* v. *Muirhead,* 233 Mich 390, 393, the following principle was established:

"Plaintiffs not having sought rescission, but, on the contrary, having affirmed, did not by a delay short of the statute of limitations lose their right to recover their damages in an action for fraud and deceit. *Dayton* v. *Monroe,* 47 Mich 193."

The fact that the plaintiff intended to rescind when he wrote his letter to defendant on September 22, 1952, would not prevent him the following February from changing his mind and proceeding in an action of fraud based on affirmance rather than rescission. The defendant cannot complain because he refused to accept the offer of rescission.

The facts that defendant contends constitute waiver are material on the question as to whether a fraud was perpetrated but would not constitute a waiver of plaintiff's right of action for fraud.

Question 4. *Did the trial court err in instructing the jury?*

The record shows that the jury was not properly instructed on the question of damages, and further that the jury was confused as to what constituted damages at the time they arrived at a verdict. The court first instructed as follows:

"Further, the amount which Mr. Paquin received from his auction sale for the machinery and equipment some several weeks, I believe it would go into the several months after the deal was closed, the amount of money which he received from that sale cannot be taken as the value of that equipment and furniture at the time that the deal was made back in July."

Subsequently the court instructed:

"And if you find that the fraud and misrepresentations have been established by a preponderance of the evidence, having in mind all of these instructions, then the plaintiff would be entitled to recover, and in this case, the plaintiff makes claim that he is entitled to recover the difference, that which he paid for the property less the amount which he received upon the sale, and those figures which have been given to you, I believe by the attorney for the plaintiff, is $6,830.75, and to that they have added interest at 5% from December 5, 1952, to the date of this trial, which they have computed, to bring the total recovery to $7,199.50."

That the verdict was arrived at without the jury understanding what constituted proof of damages is disclosed by the return of the jury, as follows:

"*Foreman of the jury:* Your honor, this jury after great deliberation finds that there is cause for action, and Mr. Paquin be reimbursed for the amount that was set by the court.

"*The Court:* Just a minute. No, you will have to state that amount.

"*Foreman of the jury:* If you will give me—I took the amount—we didn't mark that down. I think that was $7,199 and some cents.

"*The Court:* I stated that they claimed the sum of $7,199.50.

"*Foreman of the jury:* That is exactly what we agreed on."

The error in the court's instructions was also disclosed when the jury was polled and the following occurred:

"*Juror Helsel:* May I ask a question?

"*The Court:* No, the only question is, was that, and is this your verdict?

"*Juror Helsel:* Well, I didn't understand about that $10,000.

"*The Court:* No.

"*Juror Helsel:* The jury had nothing to do with the price, did they?

"*The Court:* $7,199.50.

"*Juror Helsel:* That is my verdict.

"*The Court:* That's your verdict?

"*Juror Helsel:* Yes, sir.

"*The Court:* All right."

The proper rule of damages in this case is set forth in 24 Am Jur, Fraud and Deceit, § 227, p 55:

"The great weight of authority sustains the general rule that a person acquiring property by virtue of a commercial transaction, who has been defrauded by false representations as to the value, quality, or condition of the property, may recover as damages in a tort action the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true. In other words, the defrauded party is entitled to recover the difference between the real and the represented value."

This Court does not rule that there is sufficient proof of prejudice in this record to, of and by itself, constitute reversible error. In the retrial this Court suggests however that plaintiff not endeavor to introduce hearsay testimony in an attempt to prove the absence of good will, thereby requiring defendant to object before the jury. This Court in *Kovich* v. *Church & Church, Inc.*, 267 Mich 640, 646, stated:

"The record discloses throughout a persistence upon the part of counsel for the defense in asking questions that were irrelevant and immaterial to the issue involved, thus compelling plaintiff's counsel to make continual objections. The effect of this action may have been to depreciate the plaintiff's case in the minds of the jury."

Instances such as the following, which occurred on the cross-examination of defendant, must be avoided:

"*Q.* Mr. VanHoutum, every time you have been in court over the last number of years you have had the same difficulty—

"*Defendant's attorney:* Oh, come on, just a moment, your Honor. I want the record to show that is highly prejudicial and very, very — well, I have no term for it. Did the court hear what he said, your Honor?

"*The Court:* Yes, I will sustain the objection.

"*Plaintiff's attorney:* Well, if the court please, I don't yet see the basis of the objection of the question. I made a general statement.

"*The Court:* It would be the inferences that would go along with a question such as that.

"*Plaintiff's attorney:* We are prepared to prove it the fact.

"*The Court:* Well, all right, I say the inferences would be of a nature that the court cannot approve."

Reversed, with costs to appellant.  New trial ordered.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.