WILLIAMS v AMERICAN TITLE INSURANCE COMPANY

Docket No. 77-1210. Submitted January 5, 1978, at Detroit.—Decided June 5, 1978.

Walter E. Williams and Violet V. Williams purchased certain real property from Julia Polgar and Zigmond Polgar on August 1, 1959. The Polgars provided an abstract of title certified to July 15, 1959, by Abstract Title and Guaranty Company. The abstract was originally issued on February 4, 1926, by the Macomb County Abstract Company and was extended by that company periodically through 1952. American Title Insurance Company is the successor in interest to Macomb County Abstract Company. The abstract in question failed to include a deed dated May 1, 1926, which was recorded on May 24, 1926, and conveyed the southerly 60 feet of the property in question to the Macomb County Board of Road Commissioners. The Williamses operated a fast-food restaurant on the subject property in their own names, and later under the corporate name of Whiteway, Inc. The county road commission commenced building a sidewalk through the parking lot on the property in 1969 or 1970. The sidewalk was to extend straight through the restaurant and Whiteway, Inc., was ordered to vacate the building on August 21, 1970. The restaurant equipment was moved out and placed in storage and the building dismantled by the Williamses. Mr. Williams did not rebuild the restaurant, but obtained a class C liquor license and built a bar and restaurant on the property. The new business opened 2-1/2 years after the dismantling of the first building. The equipment was eventually sold after being in storage for about 5 years. The Williamses and Whiteway, Inc., commenced an action

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 76.
    Formal requirements of judgment or orders as regards appealability. 73 ALR2d 250.
[2] 22 Am Jur 2d, Damages §§ 30–32.
    57 Am Jur 2d, Negligence §§ 37, 440.
[3] 19 Am Jur 2d, Corporations §§ 15–17, 19, 33.
[4] 57 Am Jur 2d, Negligence § 438 *et seq.*
[5] 22 Am Jur 2d, Damages § 46 *et seq.*

against the Polgars and the American Title Insurance Company for damages arising out of defect in title which was not revealed by the abstract of title. Accelerated judgment for the defendants was granted. The Court of Appeals reversed and remanded for further proceedings, 43 Mich App 95 (1973), and the Supreme Court affirmed the Court of Appeals, 391 Mich 6 (1974). After remand to the trial court, defendants Polgar were dismissed from the action and judgment was entered for plaintiffs Williams in the amount of $54,531.50 and for plaintiff Whiteway in the amount of $1,950.60, Macomb Circuit Court, Howard R. Carroll, J. The plaintiffs appeal and defendant American Title cross appeals. *Held:*

1. The plaintiffs were not entitled to damages for the loss realized on the equipment, fixtures and improvements because the plaintiffs' total failure to try to find a use for or market for the equipment constituted a breach of the duty to mitigate damages.

2. The lower court correctly ruled that Whiteway, Inc., was only a month-to-month tenant of the individual plaintiffs because of the lack of any lease arrangement between Whiteway and the Williamses, and therefore, Whiteway was entitled to only one month's lost profits.

3. The plaintiff was not precluded from recovering damages from the defendant. The trial court in determining damages correctly based its figure on the difference between the value of the property at the time the road commission began construction on the plaintiff's property and the value of the property as it remained after the road commission's rights had been proven and enforced, plus the cost of removing the structure existing at that time.

Affirmed.

1. APPEAL AND ERROR—FINDINGS OF FACT—TRIAL JUDGE—COURT RULES.

An appellate court will set aside the findings of fact of a trial judge sitting without a jury when such findings are clearly erroneous (GCR 1963, 517.1).

2. DAMAGES—MINIMIZING DAMAGES—CONTRACTS—TORTS—REASONABLE EFFORT.

The injured party, in both contract and tort actions, must make every reasonable effort to minimize damages suffered; it is the burden of the defendant, however, to show that the plaintiff has not used every reasonable effort within his or her power to minimize damages.

3. CORPORATIONS—PIERCING THE CORPORATE VEIL—FRAUD—STATUTES.

Ordinarily a corporate veil will not be pierced absent fraud, sham or other improper use of the corporate form; in ascertaining whether the separate corporate entity should be disregarded, each case is *sui generis* and must be decided in accordance with its own underlying facts.

4. PROPERTY—REAL PROPERTY—NEGLIGENCE—ABSTRACTS—ATTORNEY AND CLIENT—ROAD WIDENING—MISREPRESENTATION—CONSTITUTIONAL LAW.

A plaintiff's failure to follow up on his attorney's advice to check about possible road widening before agreeing to buy a certain parcel of land does not preclude the plaintiff's recovery for negligence against a title insurance company for a defect in an abstract prepared by the title insurance company which failed to include a deed which had been recorded years earlier and conveyed 60 feet of the property in question to the county road commission where the attorney's advice pertained to future condemnation proceedings and the plaintiff had no need to be concerned about such proceedings because of the constitutional guarantee against the taking of property for public use without just compensation; reliance on the Michigan Constitution will not preclude recovery for negligent misrepresentation (Const 1963, art 10, § 2).

5. DAMAGES—PROPERTY—REAL PROPERTY—FALSE REPRESENTATIONS—NEGLIGENCE.

Persons who acquire property about which negligent false representations as to value, quality or condition have been made are entitled to damages equal to the difference between the actual value of the property at the time of the contract and the value it would have had if the representations had been true.

*Perica, Breithart, Gallagher, Viviano, Graham, Nitz & Carmody, P. C.,* for plaintiffs.

*Rowe, Talon & Jones, P. C.,* for defendant.

Before: BASHARA, P. J., and J. H. GILLIS and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. The facts pertinent to this appeal are compiled from the record and briefs as well as the decision of *Williams v Polgar,* 43 Mich

App 95; 204 NW2d 57 (1972), and the appeal of that case to the Michigan Supreme Court, 391 Mich 6, 10; 215 NW2d 149 (1974), from which we note that:

"Plaintiffs Williams purchased certain property situated in the City of Warren, Macomb County, from defendant Polgar on a land contract dated August 1, 1959. At the time of purchase, as provided in the land contract, defendants furnished to plaintiffs an abstract of title certified to July 15, 1959 by Abstract and Title Guaranty Company. This abstract was originally issued on February 4, 1926 by the Macomb County Abstract Company and was extended by said company in 1936, 1937, 1943, 1944, 1945, 1946, 1948, 1951 and 1952. Defendant American Title Insurance Company is the successor in interest to Macomb County Abstract Company.

"The abstract of title failed to include a deed dated May 1, 1926 which was recorded on May 24, 1926 in Liber 242 of Deeds at page 174 of Macomb County records. This deed conveyed the southerly 60 feet of the property in question to the Macomb County Board of Road Commissioners.

"After execution of the land contract on August 1, 1959, plaintiffs learned, allegedly for the first time, of the existence of this omitted deed. As the result thereof, plaintiffs claim they were required to completely remove a building and that certain other damages were incurred."

Plaintiffs Williams sought damages in the amount of $150,000 to compensate them for a building which was torn down and $50,000 in lost rentals. Plaintiff Whiteway, Inc., sought damages in the amount of $100,000 for the loss of fixtures, equipment and improvements, and $100,000 in lost profits.

A nonjury trial was held which resulted in a judgment for plaintiffs Williams in the amount of $54,531.50, and for plaintiff Whiteway, Inc., in the

amount of $1,950.60.[1] On April 18, 1977, plaintiffs appealed of right. Defendant cross-appealed on

---

[1] *"OPINION OF THE COURT*

"For a complete statement of the pertinent facts in this case, with one exception, this Court refers to the opinions appearing in Williams v. Polgar, 43 Mich App 95 and in Williams v. Polgar, 391 Mich 6. The exception is that at trial on the issue of liability and damages stipulation was executed by all parties dismissing Polgar from this litigation. Since that trial this Court has been favored with excellent Briefs by both parties and this Court is satisfied that both plaintiffs Williams and Whiteway, Inc. fall within the category referred to in the Supreme Court opinion and as such are permitted to recover from the sole remaining defendant, American Title Insurance Company.

"Plaintiffs Walter E. Williams and Violet V. Williams are the sole owners of Whiteway, Inc. The business operation prior to the taking of the property by the County Road Commission was operated by Whiteway, Inc. The testimony revealed that there was no written lease between Williams and Whiteway. Whiteway, therefore, was at most a tenant from month to month and is so treated in the findings of this Court.

"This Court finds for plaintiffs and awards damages as follows:

*WILLIAMS*

| | |
|---|---:|
| Property and Building and removal | $53,500.00 |
| Cigarette and juke machine (1 month) | 344.00 |
| Rent (1 month) | 687.50 |
| | $54,531.50 |

*WHITEWAY, INC.*

| | |
|---|---:|
| Profit loss (1 month) | $ 1,606.60 |
| Cigarette and juke machine (1 month) | 344.00 |
| | $ 1,950.60 |

In addition thereto plaintiffs are entitled to interest, taxable costs and taxable appeal expenses including proper attorney fee.

"Although this Court is aware that there was a lapse of 34 months between the eviction of plaintiffs from the property and the opening of the new business which now includes a Class C license, this Court did not consider that lapse of time. Another problem which has caused some confusion involves the equipment and the loss thereof by plaintiff Whiteway. However, the testimony is that it had a depreciated value of $21,000.00. It was not disposed of and no attempt was made to dispose of it. It was placed in storage and this Court cannot in good conscience award damages therefor in view of the testimony of Mr. Williams who stated that he had made no attempt to sell the equipment on behalf of the Corporation.

"Judgment may enter. Judgment may be presented consistent herewith.

/s/ _____
Howard R. Carroll
Circuit Judge

"Dated:   March 3, 1977."

April 29, 1977.

At trial, Walter Williams testified that he and his wife had leased a restaurant at the corner of Ten Mile and Mound Road in Macomb County from Ms. Polgar prior to 1959. In August of 1959, they entered into a land contract with Ms. Polgar. Prior to signing of the land contract, Ms. Polgar acquired an abstract of title for the property. She gave it to Mr. Williams, who took it to his attorney George Parris. Mr. Williams asked Mr. Parris for his opinion as to the sufficiency of the abstract. At the end of July, Mr. Parris wrote to Mr. Williams[2] advising him that his examination of the

---

[2]

"July 31, 1959
"Mr. and Mrs. Walter E. Williams
2016 Goulson
Warren, Michigan
"Dear Sir and Madam:
"I herewith submit to you may [sic] opinion of the Abstract of Title to the land located in the City of Warren, Macomb County, Michigan, described as follows:

Lot 40, except the Northerly 60 feet and also except the Westerly 45 feet thereof, of Supervisor's Plat of Heath Acres, being a part of the Southeast quarter (1/4) of Section 20, Town 1 North, Range 12 East, Warren, Township, Macomb County, Michigan, Liber 18 of Plats, page 11, Macomb County Records,

based upon an examination of the Abstract of Title of the Abstract and Title Guaranty Co., No 45832, certified to July 15, 1959, at 8:00 A.M.
"I. *TITLE:* Subject to the matter herein contained, title is vested in Zigmond Polgar and Julia Polgar, his wife;
"II. *MORTGAGES:* None.
"III. *TAXES:* Paid through year 1958, 1959 not examined.
"IV. *RESTRICTIONS:* None appear in the plat recorded April 16, 1937.
"Please note attached sheet.

Very truly yours,
PARRIS & FERRIS
/s/
_____
By: GEORGE N. PARRIS

"GNP/sl
Attached Sheet."

"The foregoing entire opinion is based upon the abstract as submitted. Your attention is called to additional matters outside of the records which should be considered by every purchaser or mortgagee.

"POSSESSORY RIGHTS: Your [sic] should make inquiry upon the premises and if you find them occupied by any person other than the owner named, learn the rights of the occupancy claimed, as you are charged with notice of the rights of an occupant, and the rights of the person under whom an occupant claims.

"ENCROACHMENTS: You should examine the premises and adjoining lands and satisfy yourself that the buildings, fenses [sic] and their projections, if any, are located on the proper lot and within correct lines. Encroaching buildings or fences which are allowed to stand for the period prescribed in the statute of limitations can be maintained as a matter of right.

"MECHANICS' LIENS: If the building upon the premises is being repaired or repairs have been made within sixty days, the premises are liable to mechanics' liens. You should protect yourself by inquiry and inspection for this class of claims. Such liens would take priority over subsequent purchasers or mortgagees. You should demand sworn statements and waivers of liens.

"ROAD, PAVEMENTS, DRAINS AND SPECIAL ASSESSMENTS: Roads, pavements, sidewalks, drains and other public improvements are frequently installed by the state, county, township or village and assessed upon the adjoining property. Such assessments are liens upon the property but are not shown in the tax history of the abstract. Such assessments usually are payable in stallments [sic], although the entire assessment is a lien upon the property at the time of assessment. You should make inquiries at the proper offices to ascertain if there are any special assessments and satisfy yourself that they have been paid.

"BUILDING LINES, ZONING LAWS, ROAD WIDENING AND CONDEMNATION PROCEEDINGS: You should also make inquiry at the proper offices to ascertain whether there is any law or regulation restricting or regulating the height, style or type of building or setback lines on such property, or if any proceedings are contemplated or in progress as to road street widening or opening on any of said property for any public use.

"Water bills; You should make investigation to determine whether all of the water bills due against the premises are paid, because delinquent water bills constitute a lien against the premises regardless of the ownership of same.

"DRAIN ASSESSMENT: You should make investigation to determine whether all of the drain assessments against the property have been paid or whether or not there are any drain assessments against the property. Some of these assessments are in litigation at the present time and are subject to reinstatement, and you may be required to pay the same at a later date.

"YOUR ATTENTION is called to the fact that if you have actual notice of any deeds, instruments, conveyances or restrictions upon the property, you take the premises subject to that notice regardless of whether the particular instrument is on record."

abstract of title indicated that title to the property was vested in Mr. and Mrs. Polgar, that there were no mortgages on the property, that the taxes had been paid through 1958, and that no restrictions appeared in a plat recorded April 16, 1937. Attached to the letter, and referred to in the letter, was a form advising Mr. Williams to check "additional matters outside of the records which should be considered by every purchaser or mortgagee". The purchaser was advised, for example, to inquire at the proper offices to determine if "any proceedings are contemplated or in progress as to road street widening". Mr. Williams made no inquiry as to possible road widening at that time. It was not until 1969 or 1970, when the city started building a sidewalk through the parking lot on the property, that Mr. Williams first inquired about road widening.

The Williamses operated a 24 hour fast-food restaurant on the property. The city's sidewalk was to go through the parking lot on the Ten Mile side of the property and run straight through the building.

Mr. and Mrs. Williams used to operate the restaurant in their individual capacities. In the late 1960's, they decided, for business and tax reasons, to incorporate the business as Whiteway, Inc. Mr. and Mrs. Williams were the sole shareholders and directors. Whiteway became the tenant of Mr. and Mrs. Williams and paid rent to them. Whiteway owned and operated the restaurant as well as other restaurants. The Williams continued to own the property. There was no written lease with the corporation.

After 1959, as owners, Mr. and Mrs. Williams made several improvements in the building. They installed a new bathroom, new windows, new

arches, new floors, new equipment. They remodeled the outside of the building. The corporation itself also made improvements, including installing new fixtures—counters, stools, grills, refrigerators, and electrical equipment.

When it was apparent that plaintiffs did not agree with the road commission's project, the road commission began proceedings for possession which resulted in the State of Michigan ordering plaintiffs to vacate the building on August 21, 1970. Corporate plaintiff Whiteway, Inc., stopped business on August 19, 1970, and moved its equipment out. The plaintiffs Williams dismantled the building.

Mr. Williams decided against rebuilding the hamburger restaurant. After the building had been torn down, Mr. Williams' application for a Class C liquor license was approved. He built a bar and restaurant on the property. The new business opened on April 17, 1973, 2-1/2 years after the original building had been torn down. The bar is doing a profitable business.

After the fixtures and equipment had been removed from the hamburger restaurant, they were put in storage by Mr. and Mrs. Williams. Some were stored in a Detroit warehouse. Another part was stored in a building owned by Mr. Williams which was located on Nine Mile Road. A garage across from Mr. Williams' home was also used. The equipment included cooking equipment, refrigerating equipment, counters, stools and signs, etc. The property belonged to Whiteway, Inc. No attempt was made to sell the property or to use it in one of the other six restaurants owned by Mr. and Mrs. Williams. Mr. Williams testified that the property was not needed in the other restaurants which were already in operation. The property was

stored until three or four months before the trial began, at which time it was sold to A. J. Marshall Co. for $400. Marshall Co. had originally sold the property to plaintiff. The property sold to Marshall Co. included cigarette and juke machines owned by the individual plaintiffs. Mr. Williams testified about the profits which they shared with the corporation.

On cross-examination, Mr. Williams stated that he had heard, prior to the execution of the land contract, of proposals to widen Mound Road. He had not, however, heard of any proposals with regard to widening Ten Mile Road.

Alvin Barbret, A. J. Marshall Co. sales manager, testified that his company was in the bar and restaurant business. He testified that his company had held the equipment for plaintiffs for a long time and that the accrued storage charges had become enormous. Plaintiffs, according to Mr. Barbret, finally decided to sell the property to the company. Since the equipment had been built for a particular building, and since the health codes had changed since the time it was built, the equipment was worth very little at the time of sale to A. J. Marshall Co. as it was not saleable in most of Michigan. He testified, however, that the fact that the property had been stored for so long had an effect on the price paid for it by A. J. Marshall Co. in 1976.

Qualified as an expert, Ross Strevel testified as to the value of the restaurant, prior to, and subsequent to the ascertainment and enforcement of the legal rights of the road commission.

The trial court found that defendant could reasonably have foreseen that both plaintiffs Williams and plaintiff Whiteway, Inc., would rely on the accuracy of the abstract furnished to Ms. Polgar

by defendant. Plaintiffs were therefore entitled to recover against defendant. Because of the lack of a written lease between Whiteway and plaintiffs Williams, the trial court concluded that Whiteway was at most a tenant from month to month. The award of damages went as follows: as to plaintiffs Williams, $53,500 for property and building and removal, $344 for one month's lost profits on a cigarette and juke machine, and $687.50 for lost rent for one month; plaintiff Whiteway, Inc.: $1,606.60 for one month's profit lost and $344 for one month's profit lost on cigarette and juke machines. Plaintiffs were also awarded interest, taxable costs and taxable appeal expenses including proper attorney fees. The court expressly stated that it had not considered the 34 month lapse between the time the original building was torn down and the new business was opened. The court explained that it did not award damages to plaintiff Whiteway for loss of equipment because Mr. Williams testified that he had made no attempt to sell the equipment on behalf of the corporation.

On appeal, plaintiff Whiteway, Inc., claims that the trial court erred in awarding no damages for loss of equipment, fixtures, and improvements, allegedly totaling $100,000. In discussing this claim, the trial court noted that the equipment "was not disposed of and no attempt was made to dispose of it". It was placed in storage from 1970 until 1976.

We do not believe the trial court's findings to be clearly erroneous. As noted by the Supreme Court in *Tuttle v Dep't of State Highways*, 397 Mich 44, 46; 243 NW2d 244 (1976):

"Under GCR 1963, 517.1, an appellate court will set aside the findings of fact of a trial court sitting without a jury when such findings are clearly erroneous."

In both contract and tort actions, the injured party must make every reasonable effort to minimize damages suffered. It is the burden of the defendant, however, to show that the plaintiff has not used every reasonable effort within his or her power to minimize damages. *Froling v Bischoff,* 73 Mich App 496, 499; 252 NW2d 832 (1977).

Mr. Williams' total failure to even make an effort to find a use for or market for the equipment constituted a breach of the duty to mitigate damages.

The second claim of error raises a rather unique question of law. Appellant Whiteway, Inc., claims that the trial court clearly erred in finding that corporate plaintiff was only a month-to-month tenant of the individual plaintiffs and in therefore awarding only one month's lost profit, despite the fact that the individual plaintiffs are the sole shareholders and directors of the corporation.

The parties frame this issue in terms of piercing the corporate veil for the benefit of plaintiffs Williams, the sole shareholders and directors of Whiteway, Inc. It was undisputed that Whiteway operated plaintiffs' restaurant and leased the building from them.

As noted by appellant, ordinarily a corporate veil will not be pierced absent fraud, sham or other improper use of the corporate form. *Gottlieb v Arrow Door Co,* 364 Mich 450, 452; 110 NW2d 767 (1961), *Paul v University Motor Sales Co,* 283 Mich 587, 602; 278 NW 714 (1938). The notion of separate corporate identity is, however, merely a fiction:

" 'The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes

of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that *in an appropriate case,* and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical.' 7 R. C. L. p 27." *Montgomery v Central National Bank & Trust Co of Battle Creek,* 267 Mich 142, 147–148; 255 NW 274 (1934). (Emphasis added.)

Thus, complete identity of interest between the sole shareholders and the corporation may lead courts to treat them as one for *certain purposes.* See: *Pettaway v McConaghy,* 367 Mich 651; 116 NW2d 789 (1962), *L A Walden & Co v Consolidated Underwriters,* 316 Mich 341; 25 NW2d 248 (1946).

While *Brown Brothers Equipment Co v State Highway Comm,* 51 Mich App 448; 215 NW2d 591 (1974), does allow the corporate veil to be pierced by other than a creditor of a corporation, it goes on to say:

"In ascertaining whether the separate corporate entity should be disregarded each case is *sui generis* and must be decided in accordance with its own underlying facts. In the case at bar, defendant continuously treated both corporations as one and entered the settlement contract for the purpose of keeping Brown Brothers' manufacturing business in operation. Defendant was also aware that the continuation of that enterprise was the motivation for plaintiff agreeing to the state taking possession of its land. To now accept defendant's contention of 'separate corporate entity' would work an injustice on plaintiff and deny it the benefit of its contract. Defendant has shown no surprise, disadvantage, or objection at trial in plaintiff's use of Brown Brothers, Inc., books for evidence of loss for breach of contract. Equitable principles require this Court to disregard the legal fiction of separate corporate entity and approve the trial court's action." 51 Mich App at 452–453.

In the case at bar we do not believe that the plaintiffs should be allowed to raise the question of piercing the corporate veil. They are the ones that set it up; they had the advantage of the corporation status for many years. *Cf. Clement, Bane & Co v Michigan Clothing Co,* 110 Mich 458; 68 NW 224 (1896). However, now that the shoe is on the other foot, plaintiffs want to set that status aside. We conclude that the trial court's ruling was proper, in the interest of justice.[3]

At the beginning of trial, cross-appellant moved for summary judgment, GCR 1963, 117.2(1), for failure of plaintiffs to allege facts as to the basis of cross-appellant's duty toward plaintiff Whiteway, Inc. Plaintiffs responded that defendant had been on notice as to Whiteway's claim. No specific statement had been sought. Amendment of the complaint was possible. The trial court responded that it would allow no amendment of the complaint. It referred to GCR 1963, 111, and noted that, although Whiteway's claim had not been apparent at the beginning of the suit, the claim was clear now. In response to the court's inquiry, defendant admitted that it had learned the substance of Whiteway's claim in the deposition of Mr. Williams. The trial court took the motion for summary judgment under advisement. The trial court never expressly addressed the motion again.

In light of the notice function of Michigan pleading rules, and especially since cross-appellant never denied that it had notice as to the basis of Whiteway, Inc.'s, claim, we find no error in the

---

[3] Had plaintiff Williams been suing for relocation costs, this Court's opinion in *Brown Brothers Equipment Co v State Highway Comm,* 51 Mich App 448; 215 NW2d 591 (1974), would have been directly on point. But there was no concrete reference to relocation costs in the complaint. *See Ford v Howard,* 59 Mich App 548; 229 NW2d 841 (1975).

failure of plaintiffs' complaint to allege any facts as to the status of Whiteway, Inc.

Cross-appellant further claims that plaintiffs should have known of the abstracter's negligent misrepresentation at the time they entered into a land contract for the sale of the property. American Title argues that at the time plaintiffs bought the property from Ms. Polgar, their attorney told them to check about possible road widening. Plaintiffs admitted that they made no attempt to follow up. Therefore, American Title contends that plaintiffs' negligent reliance on the abstract precludes recovery. We cannot agree.

The form that plaintiffs received from their attorney refers to future condemnation proceedings. It is entirely possible that plaintiffs may have decided not to pursue the matter in view of the constitutional guarantee of compensation:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." Const 1963, art 10, § 2.

Reliance on the Michigan Constitution will not preclude recovery for negligent misrepresentation.

Finally, cross-appellant argues that, in a case of negligent misrepresentation of an abstract company as to chain of title for failure to discover a deed conveying part of the property, damages should be based on the value of the property at the time of the conveyance—in this case, the value of the property at the date of the conveyance from Ms. Polgar to plaintiffs. Cross-appellant notes that when owners of property breach covenants of title, the breach occurs at the time of the conveyance

and damages are awarded based on the value of the property at that date.

The general rule in cases based on negligence is that persons who acquire property about which false representations as to value, quality or condition have been made are entitled to damages equal to the difference between the actual value of the property at the time of the contract and the value it would have had if the representations had been true. *D'Alessandro v Vander Hooning*, 365 Mich 66; 112 NW2d 114 (1961), *Paquin v Van Houtum*, 343 Mich 111, 123; 72 NW2d 169 (1955).

Here, Ross Strevel testified that, before the road commission complication arose, the plaintiffs' property was worth $161,500. Plaintiffs' property as it remained after the road commission's rights had been proven and enforced was worth $111,000. To the $50,500 difference was added the $3,000 cost of removing plaintiffs' restaurant. The trial court adopted Mr. Strevel's opinion that $53,500 was just compensation.

In *Williams v Polgar, supra,* this Court adopted the "date of discovery" statute of limitations rule for negligent misrepresentation.

The finding of fact by the trial court was not clearly erroneous, GCR 1963, 517.1.

Affirmed. No costs, neither side having prevailed in full.